# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIANA L. HOLT,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL ASTRUE, Commissioner of Social Security,<br><br>Defendant. | ) | 1:11-cv-01841 GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## BACKGROUND

Plaintiff Briana L. Holt ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin.[1]

//

//

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. (*See* Docs. 5 & 10.)

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed applications for benefits in May 2008, alleging disability as of January 15, 2007. AR 110-113. Plaintiff's applications were denied initially and on reconsideration; she then requested a hearing before an Administrative Law Judge ("ALJ"). AR 64-67, 74-79. ALJ Regina L. Sleater held a hearing and subsequently issued an order denying benefits on March 23, 2010, finding Plaintiff was not disabled. AR 54-60. On September 12, 2011, the Appeals Council denied review. AR 1-3.

**Hearing Testimony**

ALJ Sleater held a hearing on February 19, 2010, in Fresno, California. Plaintiff appeared and testified; she was assisted by attorney Robert Christenson. Vocational Expert ("VE") Robin Scher and Medical Expert ("ME") Steven Gerber also testified. AR 7-46.

Plaintiff lives in Porterville with her mother and sisters, one of whom is disabled. AR 10-11. Although Plaintiff's mother is ninety years old, she still does most of the cooking. Plaintiff does some, but has to sit on a chair to cook or do the dishes. AR 11.

Once a month Plaintiff sees her treating physician for refills of medication. AR 11-12. With regard to prescription medications, she takes the following: 750 milligrams of Vicodin, four times a day; 800 milligrams of Ibuprofen, three times a day; 1.25 milligrams of Levothyroxine, once a day; 60 milligrams of Diltiazem, twice a day; 25 to 50 milligrams of Dyazide, once a day; 40 milligrams of Nexium, once a day; and 75 milligrams of Lyrica, twice a day; 0.5 milligrams of Donnatal, twice a day; 0.5 milligrams of Xanax, once a day; and 0.125 milligrams of HyoMax, as needed; Voltaren Gel 1%, topical application twice a day; Fluocinonide Gel, topical application twice a day; 15 milligrams of Buspar, three times a day; 20 milligrams of Citalopran, once a day; 10 milligrams of Flexeril, up to twice a day. AR 12-16. As for over the counter medications, Plaintiff also uses Excedrin migraine and Tylenol PM. AR 16-17.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff does not receive psychiatric treatment, other than the prescription medications she uses to treat depression, but stated that it was "another area that [she] need[s] to take care of." AR 17.

When asked to describe a typical day, Plaintiff indicated that she wakes and gets up anywhere between 11 a.m. and 2 to 3 p.m., depending upon her pain level. AR 21. She wakes at about 11 a.m. but stays in bed to take her medications before getting out of bed. AR 22. She does not have any problems sleeping and typically sleeps for about ten hours, sometimes as many as twelve to fourteen hours a night. She is a lot more comfortable sleeping. AR 22.

After getting out of bed, Plaintiff will eat a meal, and then go sit on the couch to watch television. AR 23. She enjoys Oprah, Dr. Phil and the evening news. AR 23. She also enjoys crafts like embroidery, but due to the pain in her hands and fingers she is not certain how long she will be able to continue to enjoy embroidery. AR 24. After watching television, Plaintiff eats dinner. If her stomach is bothering her however, she will skip dinner. AR 25. Sometimes she will fix herself something to eat, and other times she does not "feel like standing there" to do so. AR 26. Her son loves to cook and sometimes her children will bring by food. AR 26. Plaintiff's mother takes care of meal preparation for her sister. AR 26. After dinner, Plaintiff watches television from the couch, although there are times she goes back to bed to lie down. AR 26.

Plaintiff cannot walk for long or walk around the block. She cannot sit on the floor because she cannot bend her knees in order to do so. AR 23-24; *see also* AR 28 (can walk "[m]aybe a block . . . with pain"]). She can stand between fifteen to forty-five minutes at a time. AR 27. Within an eight-hour day, Plaintiff estimated she could stand for about two to four hours depending on whether it was a good day or a bad day. AR 27. She can sit for a period between forty-five minutes and two hours, for four to six hours total in an eight-hour day. AR 27. Plaintiff can lift about ten pounds. AR 27. She has difficulty concentrating because she is easily distracted, estimating she could focus for about ten to fifteen minutes. AR 28. About four to six

days a month, Plaintiff has a "bad day" wherein she is in "so much pain" and is depressed, and thus wants to stay in bed all day. AR 28.

Plaintiff used to work at Wal-Mart as a cashier, but she had problems with her back and knees. AR 29. Plaintiff indicated she was moved to a seated position "on the door," but she was ultimately terminated for "under stocking." AR 29-30. Her last day was December 16, 2006. AR 33.

ME Gerber is board certified in both internal medicine and cardiovascular disease. He reviewed all medical records provided and thus was prepared to testify concerning his opinion of Plaintiff's physical conditions. AR 18-19. The doctor indicated Plaintiff suffers from the medically determinable impairments of fibromyalgia, hypothyroidism, hypertension, mild degenerative disk disease of the lumbar spine, mild degenerative joint disease of both knees, and obesity. AR 19. In his opinion, these conditions, alone or in combination, do not meet or equal a listed impairment. AR 19. More particularly, ME Gerber explained that the physical findings throughout the record were "not highly significant," the objective studies, including x-ray and laboratory findings, do not demonstrate severe abnormalities, and the doctor noted there was "an extraordinary disparity between the subjective complaints and the objective findings" in the medical record evidence. AR 19.

With regard to Plaintiff's ability to perform work, ME Gerber opined that she is capable of "at least sedentary" work, with a limitation to "occasional in all postural[]" categories, but no climbing of ladders or scaffolds. AR 20.

VE Scher described Plaintiff's past work as a cashier/checker, DOT[3] 211.462-014 with an SVP[4] of three, light but performed at the medium level; and greeter or information clerk, DOT 249.262-010, unskilled and sedentary. AR 37, 39, 44. There are no transferable skills. AR 38.

---

[3] "DOT" refers to the Dictionary of Occupational Titles.

[4] "SVP" refers to the Specific Vocational Preparation.

In a hypothetical question posed by the ALJ, the VE was asked to assume a hypothetical person of the same age, education, language and work experience, who had the residual functional capacity ("RFC") to lift and carry no more than ten pounds, with the ability to stand and walk for two hours in an eight-hour day and to sit for at least six hours in an eight-hour day, who may only walk on even terrain, with a limitation to occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling, and never climbing ladders or scaffolds. AR 38.  VE Scher indicated that such an individual could perform Plaintiff's past work as a greeter or information clerk at the sedentary level.  AR 39.

In a second hypothetical, the VE was asked to consider the same individual, with the following RFC: the ability to lift and carry no more than ten pounds, to stand and walk no more than two hours in an eight-hour day for no more than fifteen minutes at one time, and the ability to sit for twenty minutes at a time, for a total of two hours in an eight-hour day, with constant disruption to focus and concentration, at will breaks, low stress, no repetitive movements of the hands and arms, and only occasional head movements.  AR 40.  VE Scher testified that such an individual would be precluded from performing Plaintiff's past work, and could not perform any other work in the national economy.  AR 40.

In a third hypothetical, VE Scher was asked to assume the same individual, with the following RFC: the ability to lift and carry ten pounds, to stand and walk for a total of two hours in an eight-hour day in fifteen to forty-five minutes increments, with walking limited to never more than the equivalent of a block, to sit for a total of four to six hours in an eight-day for forty-five minutes to two hours at one time, who could focus on simple tasks for fifteen minutes at a time, and who can occasionally stoop and crouch, but who must never crawl, kneel or climb.  AR 41.  The VE indicated such an individual could perform Plaintiff's past work as a greeter; however, if a further limitation of three or more absences per month were added, work would be unavailable. AR 41.

Plaintiff's counsel questioned his client further with regard to the nature of the greeter position, whether it was performed sitting or standing. AR 41. Plaintiff testified that as a greeter she was required to stand the entire time; she was not permitted to sit. AR 42; *but see* AR 29-30 (moved to seated position at the door). From March to October 2006, Plaintiff acted as a greeter. AR 42.

Based upon the aforementioned testimony, Plaintiff's counsel posed questions of the VE. AR 43. With regard to the ALJ's first hypothetical question, when VE Scher considered a greeter position that required constant standing, she indicated the individual could not perform Plaintiff's past work as a greeter as Plaintiff herself performed it. AR 43. Nonetheless, the individual could still perform the work of a greeter as that position is generally performed. AR 43.

Finally, in a hypothetical question posed by Plaintiff's counsel, the VE was asked to consider an individual of the same age, education and work experience, who could stand and walk for less than two hours in an eight-hour day, could sit for four to six hours in an eight-hour day, with the ability to lift and carry less than ten pounds frequently or occasionally. AR 44. The VE explained that such an individual could perform Plaintiff's past work as a greeter as generally performed because that position does not require lifting and the individual can sit and stand at will. AR 44.

**<u>Medical Record</u>**

The entire medical record was reviewed by the Court. AR 217-359. The medical evidence will be referenced below as necessary to this Court's decision.

**<u>ALJ's Findings</u>**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 54-60.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2007. AR 56. Further, the ALJ identified the following severe

impairments: osteoarthritis in both knees, degenerative disc disease and arthritis in the lower back, fibromyalgia, and obesity. AR 56. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments or combination of impairments did not meet or exceed any of the listed impairments. AR 57.

Based on her review of the entire record, the ALJ determined that Plaintiff has the RFC to: perform of a wide range of sedentary work; lift and carry ten pounds; stand or walk for two hours in an eight-hour workday, walking only on even terrain; sit for six hours in an eight-hour workday; with the ability to occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl, but must avoid climbing ladders or scaffolds. AR 57-59.

Next, the ALJ determined that Plaintiff was capable of performing her past relevant work as a greeter or information clerk. AR 59. Therefore, the ALJ concluded Plaintiff was not disabled. AR 59-60.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ erred by (1) failing to adopt the entire medical opinion of orthopedic examiner Hassanali Mohamedali; (2) failing to adopt the opinion of treating physician Suneel Wadhwani; and (3) failing to give sufficient reasons for rejecting Plaintiff's testimony. (*See* Docs. 13 & 15.)

**DISCUSSION**

***The Weight Afforded the Medical Evidence***

Plaintiff argues that the ALJ erred with regard to her assessment of the opinions of Suneel Wadhwani, M.D. and Hassanali Mohamedali, D.O. (Doc. 13 at 7-10.) The Commissioner contends however that the ALJ properly considered the medical opinions of both physicians. (Doc. 14 at 8-12.)

**1. *The Legal Standards***

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining


physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test

results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

**2. *The Medical Opinions at Issue***

**A. Suneel Wadhwani, M.D.**

In a Medical Source Statement - Physical dated June 3, 2008, treating physician Dr. Wadhwani indicated that Plaintiff was not impaired with regard to lifting and carrying, and yet also indicated she could occasionally lift ten pounds due to "mild osteoarthritis of knees & shoulder." AR 245. The doctor opined Plaintiff could stand and/or walk at least two hours in an eight-hour workday, and could sit for six hours of an eight-hour workday. AR 245. While indicating that Plaintiff would need to alternate between sitting and standing, he indicated "breaks and lunch periods provide sufficient relief," but also that a position change would be required "every 30 minutes." AR 246. Next, Dr. Wadhwani indicated Plaintiff could occasionally balance, stoop and crouch, but could never climb, kneel or crawl. AR 246. Reaching, handling, fingering and feeling could all be performed frequently, and Plaintiff was not limited with regard to vision or communication. AR 246. Finally, because of a history of asthma, the doctor indicated Plaintiff was restricted from working around heights, chemicals and dust. AR 247.

In a Residual Functional Capacity Questionnaire dated February 2, 2010, Dr. Wadhwani's diagnoses reflect osteoarthritis, diffuse degenerative disc disease, fibromyalgia, irritable bowel syndrome, depression and anxiety. AR 348. Plaintiff's prognosis was recorded to be poor. AR 348. Her symptoms included chronic fatigue, multiple tender points and joint pain. AR 348. The doctor characterized Plaintiff's pain as constant, "over all body joint pain scale 8/10." AR 348. Asked to identify the clinical studies in support of his opinion, Dr. Wadhwani identified a CT scan of the lumbar spine and generalized degenerative joint disease. AR 349. After listing the numerous medications prescribed, the doctor indicated Plaintiff's impairments could be expected to last more than twelve months, and that Plaintiff was not a malingerer. AR 349.

With regard to “emotional factors” affecting his patient, Dr. Wadhwani indicated the psychological conditions of depression, somatoform disorder, psychological factors affecting physical condition, and anxiety affect Plaintiff’s physical condition. AR 349. The doctor opined that Plaintiff’s pain, fatigue and other symptoms constantly affect her attention and concentration, and as a result, he believed she could concentrate for five minutes at one time. AR 349. Dr. Wadhwani indicated Plaintiff was “[i]ncapable of even ‘low stress’ jobs” but did not further explain his reasoning. AR 350. In a competitive workplace environment, the doctor indicated Plaintiff’s functional limitation was poor. He opined that she could walk one block without rest or severe pain, could sit for twenty minutes at one time, and could stand for fifteen minutes at one time. AR 350. In an eight-hour workday, Dr. Wadhwani indicated Plaintiff could sit and stand or walk for less than two hours. AR 350. Next, the doctor indicated Plaintiff would need to “walk around” during an eight-hour workday, and would need to do so every thirty minutes for ten minutes at a time. AR 350. Sitting and standing at will, and taking frequent unscheduled breaks would also be required. AR 351. Plaintiff could occasionally lift and carry less than ten pounds, and could never carry twenty or fifty pounds. AR 351. She could occasionally look down, turn her head right or left, look up, and hold her head in a static position. AR 351. Plaintiff could rarely twist, stoop and crouch, but could never climb ladders or stairs. AR 351. Next, Dr. Wadhwani opined that Plaintiff had significant limitations regarding repetitive reaching, handling and fingering. AR 352. He believed she would likely be absent from work more than four days per month. AR 352. Finally, Dr. Wadhwani indicated Plaintiff “has ADD & a bipolar personality and also OCD.” AR 352.

**B. Hassanali Mohamedali, D.O.**

Board eligible physician Dr. Mohamedali completed a comprehensive orthopedic evaluation of Plaintiff on July 24, 2008. AR 270-273. After taking a history from Plaintiff (AR 270-271), the doctor recorded the following physical examination results. Plaintiff was in no acute distress, was cooperative, and got on and off the examination table with ease. She stood

five feet four inches tall, and weighed 194 pounds. AR 271. With regard to coordination, station and gait, Plaintiff had a normal gait pattern and a negative Romberg test. She was unable to squat, and could not perform the heel-toe or tandem walking tests as a result of knee pain. AR 271. Range of motion findings were recorded in the spine, knee, ankle, elbow and finger/thumb joints, and a negative sitting straight-leg raise test was recorded. AR 271-272. Motor strength and muscle bulk and tone were recorded at 5/5 in the upper and lower extremities bilaterally, and the reflexes were normal. AR 272. Generally, Dr. Mohamedali indicated Plaintiff's spine was straight and there was normal lumbar lordosis with diffuse pain and tenderness in the lumbar area. AR 272. The knees were swollen bilaterally and general arthritic changes were noted. Slight crepitus was noted on range of motion in her knees. AR 272. While Plaintiff's ankle joints were diffusely tender with mild swelling over the right fourth and fifth metatarsophalangeal joints, full range of motion was recorded. AR 272. Full range of motion was present in the elbows and there was no swelling noted in the fingers or thumbs. AR 272. The doctor noted fifteen of eighteen positive fibromyalgia points. AR 272.

Dr. Mohamedali diagnosed possible psoriatic arthritis, significantly affecting bilateral knees, chronic myofascial pain syndrome, and low back pain. AR 273. The functional assessment provided that Plaintiff could stand and walk for less than two hours in an eight-hour day, could sit for four to six hours in an eight-hour day, and the amount of weight Plaintiff could lift and carry both frequently and occasionally was less than ten pounds due to significant knee pain and psoriatic arthritis. Thus, the doctor opined that Plaintiff was limited and restricted on postural motions, along with an environmental limitation to even terrain only. No manipulative limitations were identified. AR 273.

**3. *The ALJ's Findings***

ALJ Sleater's relevant findings provide as follows:

> In July 2008, claimant was examined by Hassanali Mohamedali, a neurological consultative examiner. Claimant was able to get on and off the examination table with relative ease, and had normal gait, good posture, normal lumbar lordosis, and normal motor strength and sensation. However, she did have

> restricted range of motion in her lumbar spine and knees, tenderness over the lumb[a]r area, swelling in the knees, and 15 out of the 18 positive fibromyalgia points. Dr. Mohamedali opined that claimant was limited to lifting or carrying less than 10 pounds frequently and occasionally; standing or walking less than 2 hours in an 8-hour workday; sitting 4-6 hours in an 8-hour workday; and walking only on even terrain. Dr. Mohamedali's opinion is, for the most part, consistent with and well-supported by the record as a whole, and the undersigned gives it substantial weight.
>
> Similarly, the undersigned gives substantial weight to the State agency medical consultants' physical residual functional capacity assessments, as they are, for the most part, consistent with and well-supported by the record as a whole.
>
> In contrast, the undersigned accords reduced weight to the February 2010 opinion of claimant's treating physician, Dr. Wadhwani. [H]is opinion that claimant is significantly restricted by psychological conditions is not well-supported by the record. Moreover, his opinion regarding claimant's physical functional limitations is overly restrictive in light of the objective medical evidence. In particular, the undersigned notes that the physical residual functional capacity assessment Dr. Wadhwani prepared in February 2010 is significantly more restrictive than an earlier one he prepared in June 2008, despite the fact that the record contains no objective evidence of any significant worsening of claimant's conditions during the time period between June 2007 and February 2010.
>
> In sum, the above residual functional capacity assessment is supported by the lack of objective medical evidence of any severe abnormalities justifying a more restrictive residual functional capacity than the one prescribed above, the well-supported medical opinions of Dr. Gerber and Dr. Mohamedali, and the claimant's acknowledged daily activities, which include simple food preparation, doing arts and crafts, and watching television.
>
> Interestingly, despite her alleged constant pain, she has no trouble sleeping 10-14 hours per day. This discrepancy calls into question claimant's credibility, as does the inconsistency in her testimony regarding her past work as a greeter at Wal-Mart. During the hearing, claimant first testified that when her back pain worsened, she was switched from a cashier position to a greeter position where she sat near Wal-Mart's entrance and greeted customers. However, when questioned by her representative later in the hearing, she claimed she was not permitted to sit as a greeter and, instead, was required to stand the entire time.

AR 58-59, internal citations omitted.

**4. *Analysis***

ALJ Sleater gave specific and legitimate reasons for affording Plaintiff's treating physician's opinion reduced weight, to wit: the opinions were not well-supported by the record, were overly restrictive in light of the objective medical evidence, and were inconsistent with the treating record. A review of this record confirms the ALJ's findings in this regard. The February 2010 assessment is indeed more restrictive than the June 2008 assessment (*cf*. AR 245-247 to AR

348-352), and yet the objective evidence during this period fails to support the more restrictive findings. The medical record reveals the objective medical evidence establishes largely mild findings. *See* AR 233-236, 251-252, 301-302 (MRI, CT, x-ray results). Further, Dr. Wadhwani's treatment records plainly do not support his restrictive opinion. *See* AR 229-230, 253, 255, 257-258, 260, 261, 263, 265, 267, 304, 307, 309, 311, 313-315, 317, 319, 321, 323-324, 330, 332, 334-335, 337, 339-340, 342-343, 346, 353-358.[5] A specific example can be found in June 2008 where Dr. Wadhwani was of the opinion there were no manipulative limitations, and then in February 2010 the doctor stated there were significant limitations (*cf*. AR 246 to AR 352), and yet the treating notes and objective evidence do not support such a finding. Notably too, Dr. Wadhwani's opinion regarding psychological limitations is unsupportable. His references to diagnoses of attention deficit disorder, obsessive-compulsive disorder and a bi-polar disorder are completely without support in this record.

The reasons offered by the ALJ are specific and legitimate reasons to afford Dr. Wadhwani's opinions less weight. *See Magallanes v.* Bowen, 881 F.2d at 751 (a lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion); *Roberts v. Shalala*, 66 F.3d at 184 (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also Buckner-Larkin v. Astrue*, 2011 WL 4361652 (9th Cir. Sept. 20, 2011).

With regard to Dr. Mohamedali's opinion, wherein the ALJ gave it "substantial weight" because it was consistent and well-supported by the record as a whole, the ALJ did not err.

As an examining physician, Dr. Mohamedali's opinion - to the degree it conflicts with other physician opinions - may only be rejected for specific and legitimate reasons. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995). Here, plainly the ALJ did not adopt that portion of Dr. Mohamedali's opinion wherein the doctor opined Plaintiff was capable of sitting "4-6 hours" in an eight-hour workday. Dr. Mohamedali's examination revealed largely mild objective

---

[5] The Court notes that a number of Dr. Wadhwani's treatments records are duplicated in the record.

findings, and those coupled with the objective medical evidence in the record - mild findings on CT, MRI and x-ray reports - support the ALJ's decision to adopt an RFC with a finding that Plaintiff was capable of sitting for six hours - rather than four to six hours - in an eight-hour workday.[6] An ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions. *See Magallanes v. Bowen*, 881 F.2d at 753-754.

In sum, ALJ Sleater's findings are supported by substantial evidence and are free of legal error.

***The ALJ's Credibility Findings***

Plaintiff contends the ALJ erred in assessing her testimony. (Doc. 13 at 10-12.) In response, the Commissioner asserts the ALJ's credibility findings are supported by substantial evidence. (Doc. 14 at 12-14.)

**1. *The Legal Standards***

A two step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific

---

[6]ME Gerber also opined Plaintiff's back and knee problems were mild based upon objective medical evidence. AR. He further concluded that Plaintiff was capable of "at least sedentary" work. AR 20.

to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

**2. *Analysis***

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, ALJ Sleater found that Plaintiff suffered from the severe impairments of osteoarthritis in both knees, degenerative disc disease and arthritis in the lower back, fibromyalgia, and obesity. AR 56. Additionally, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 58. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of those symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ

to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

In this case, ALJ Sleater found, in pertinent part, as follows:

> Claimant alleges she is unable to work due to constant pain throughout her body, which limits her ability to walk, stand, sit, bend her knees, and, more recently, perform personal care.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> [T]he above residual functional capacity assessment is supported by the lack of objective medical evidence of any severe abnormalities justifying a more restrictive residual functional capacity than the one prescribed above, the well-supported medical opinions of Dr. Gerber and Dr. Mohamedali, and claimant's acknowledged daily activities, which include simple food preparation, doing arts and crafts, and watching television.
>
> Interestingly, despite her alleged constant pain, she has no trouble sleeping 10-14 hours per day. This discrepancy calls into question claimant's credibility, as does the inconsistency in her testimony regarding her past work as a greeter at Wal-Mart. During the hearing, claimant first testified that when her back pain worsened, she was switched from a cashier position to a greeter position where she sat near Wal-Mart's entrance and greeted customers. However, when questioned by her representative later in the hearing, she claimed she was not permitted to sit as a greeter and, instead, was required to stand the entire time [].

AR 58-59, internal citations omitted.

ALJ Sleater provided clear and convincing reasons for discounting Plaintiff's credibility, including Plaintiff's own inconsistent testimony concerning (1) her purportedly constant pain that is in conflict with her ability to sleep for ten to fourteen hours per day, and (2) her previous work at Wal-Mart and the manner in which she performed the position of greeter. *See Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d at 638. The ALJ also noted that the medical evidence did not in fact support the severity of the pain alleged by Plaintiff; this too is a proper reason to discount credibility. *See Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis

for rejecting claimant's testimony of severity of symptoms); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations). Additionally, the ALJ noted that Plaintiff's activities of daily living support her determination that Plaintiff could perform work.  An ALJ can look to daily living activities as part of the credibility analysis.  *Burch v. Barnhart*, 400 F.3d at 680.  The ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.  *Orn v. Astrue*, 495 F.3d at 639.  Here, while ALJ Sleater did not specify how Plaintiff's activities of simple food preparation, arts and crafts, and television watching transfer to a work setting, reversal is not required.  That is so because even assuming the ALJ erred on this basis, in light of the other clear and convincing reasons provided for properly discounting Plaintiff's credibility, the credibility determination will be upheld.  *See e.g., Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

Lastly, if the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Accordingly here, because the ALJ did not arbitrarily discredit Plaintiff's testimony, her findings are supported by substantial evidence and are free of legal error.

//
//
//
//
//
//

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Briana L. Holt.

IT IS SO ORDERED.

**Dated: October 24, 2012**

**/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE